UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
DAVID STERN,
*On behalf of himself and all other persons*
*similarly situated,*

                Plaintiff,

      v.

ELECTROLUX HOME PRODUCTS, INC.,

                Defendant.
-----------------------------------------------------------------X

**MEMORANDUM
AND ORDER**
24-CV-8204-SJB-ARL

**BULSARA, United States District Judge:**

Plaintiff David Stern ("Stern") commenced this consumer class action against Defendant Electrolux Home Products, Inc. ("Electrolux"), based on allegedly defective drawers and shelving in certain refrigerator models manufactured by Electrolux, one of which he purchased. (Compl. dated Nov. 26, 2024, Dkt. No. 1 ¶ 1). In the operative pleading, Stern's Amended Complaint filed on May 6, 2025, he asserts the following claims on behalf of the putative class: violations of New York General Business Law ("GBL") §§ 349 and 350, fraudulent concealment and nondisclosure, breach of express and implied warranties, unjust enrichment, negligent misrepresentation, and breach of the duty of good faith and fair dealing. (Am. Compl., Dkt. No. 24 ¶¶ 107–68). Electrolux has moved to dismiss all the claims. (Def.'s Mot. to Dismiss dated June 26, 2025 ("Def.'s. Mot."), Dkt. No. 33-1). For the reasons explained below, Electrolux's motion is granted.

STANDARD OF REVIEW

"To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain more than "naked assertion[s] devoid of further factual enhancement." *Id.* (quotations omitted). In other words, a plausible claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; Fed. R. Civ. P. 8(a)(2). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The determination of whether a party has alleged a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

This pleading requirement "does not impose a probability standard at the motion-to-dismiss stage." *Mosaic Health, Inc. v. Sanofi-Aventis U.S., LLC*, 156 F.4th 68, 77 (2d Cir. 2025) (noting that plausibility does not equate to probability). And "on a Rule 12(b)(6) motion it is not the province of the court to dismiss the complaint on the basis of the court's choice among plausible alternatives. Assuming that [plaintiff] can adduce sufficient evidence to support its factual allegations, the choice between or among

2

plausible interpretations of the evidence will be a task for the factfinder." *Id.* (quotations omitted).

For the purpose of this motion, the Court is "required to treat" the Plaintiff's "factual allegations as true, drawing all reasonable inferences in favor of [Plaintiff] to the extent that the inferences are plausibly supported by allegations of fact." *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021). The Court "therefore recite[s] the substance of the allegations as if they represented true facts, with the understanding that these are not findings of the court, as we have no way of knowing at this stage what are the true facts." *Id.*

<u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

In November 2019, Stern purchased a new Frigidaire Gallery 22.2 cubic foot counter-depth, side-by-side refrigerator for his kitchen from Plesser's Appliances in Babylon, New York. (Am. Compl. ¶ 30). The refrigerator was delivered and installed in February 2020. (*Id.* ¶ 31). Stern alleges that the drawers and shelving in the refrigerator "began breaking within six to nine months of purchase." (*Id.* ¶ 35).

In October 2021, Stern notified Electrolux Customer Care through their online complaint form and chat system that "every shelf with a drawer had broken and the middle drawer also cracked as a result of the failing shelf," and asked Electrolux to replace the broken shelves and drawers. (*Id.* ¶ 36). Electrolux did not respond to Stern's complaints. (*Id.*). Because Electrolux was unresponsive, Stern emailed customer service at Plesser's Appliances on October 29, 2021. (*Id.* ¶ 37). Plesser's told Stern he

was outside of the one-year warranty period, and it was too late to utilize the warranty. (Am. Compl. ¶ 38).

Stern alleges that Electrolux "misrepresented and omitted material information regarding the [refrigerator] and/or its packaging by failing to disclose known defects and risks to a significant portion of targeted consumers who, acting reasonably in the circumstances, were misled." (*Id.* ¶ 114).  Specifically, he alleges that "Electrolux uniformly markets its refrigerators as highly rated, top-of the-line appliances," (*id.* ¶ 19), and that Electrolux represented that the refrigerators were "free from defects," (*id.* ¶ 79).  He also alleges that several advertisements for the refrigerator—including advertisements for its SpaceWise Organization System, CrispSeal Plus Crisper, and EvenTemp Cooling System—were false or misleading.  (*See id.* ¶¶ 19–22, 34).  And Electrolux knew about the defective drawers and shelving based on consumer complaints, (*id.* ¶¶ 64, 71), but "did not disclose . . . the Defect . . . at the time of sale," (Am. Compl. ¶ 78).

Prior to filing this action, Stern filed another action in this Court based on the same underlying allegations.  *See* Complaint ¶¶ 1–9, 17–35, *Stern v. Electrolux Home Prods., Inc.*, No. 22-CV-3679 (E.D.N.Y. June 22, 2022).  Following a premotion conference ("PMC") with Judge Azrack, Electrolux moved to dismiss Stern's Complaint. Defendant's Motion to Dismiss, *Stern v. Electrolux Home Prods., Inc.*, No. 22-CV-3679 (E.D.N.Y. Mar. 17, 2023).  Judge Azrack referred the motion to Judge Lindsay for a report and recommendation.  Order, *Stern v. Electrolux Home Prods., Inc.*, No. 22-CV-3679 (E.D.N.Y. Nov. 1, 2023).  On January 30, 2024, Judge Lindsay issued a report and

recommendation recommending that the Court grant Electrolux's motion to dismiss, *Stern v. Electrolux Home Prods., Inc.*, No. 22-CV-3679, 2024 WL 416495 (E.D.N.Y. Jan. 30, 2024), which Judge Azrack adopted, *Stern v. Electrolux Home Prods., Inc.*, No. 22-CV-3679, 2024 WL 4297656 (E.D.N.Y. Sep. 26, 2024).  Misapprehending Judge Azrack's Order, which granted Stern leave to refile a motion to amend, *see id.* at *4, Stern instead filed a new case, (*see* Pl.'s Opp'n to Def.'s Mot. for PMC dated Feb. 14, 2025, Dkt. No. 21 at 2).[1]

Following the opening of this new case, Electrolux requested a PMC to dismiss Stern's Complaint.  (Def.'s Mot. for PMC dated Feb. 7, 2025, Dkt. No. 18).  The Court held a PMC on March 24, 2025, and granted Stern leave to amend his complaint to cure the various deficiencies identified by Judge Azrack and Judge Lindsay.  (Min. Entry dated Mar. 25, 2025).  Along with the Amended Complaint, the Court directed Stern to file a letter explaining why the Amended Complaint cures the previously identified deficiencies and permitted Electrolux to file a letter in response.  (*Id.*).  After reviewing the letter submissions, the Court dismissed Stern's claims for unjust enrichment and breach of the duty of good faith and fair dealing with prejudice—based on Stern's failure to revive these claims, which Judge Azrack and Judge Lindsay deemed duplicative and subject to dismissal in the prior case, in his letter—and directed the parties to full briefing on the remaining claims.  (Order dated June 5, 2025).  Defendants now seek dismissal of Stern's remaining claims for violations of GBL §§ 349 and 350,

---

[1] Despite this error, the parties do not dispute that the decision in the prior, now closed, case remains part of the present case.

fraudulent concealment and nondisclosure, breach of express and implied warranties, and negligent misrepresentation.  (Def.'s Mot. at 4–10).

DISCUSSION

## I.    New York General Business Law Claims

GBL Section 349 "provides that '[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York] are . . . unlawful.'"  *Venticinque v. Back to Nature Foods Co., LLC*, No. 23-1236, 2024 WL 3385136, at *1 (2d Cir. July 12, 2024) (quoting N.Y. Gen. Bus. Law § 349(a)).  And Section 350 "prohibits '[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service.'"  *Id.* (quoting N.Y. Gen. Bus. Law § 350).  To state a claim under these statutes, a plaintiff must "show that the defendant engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice."  *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 96 (2d Cir. 2023) (quotation omitted).  "Deceptive acts are acts that are likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) (quotation omitted).  "[I]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer."  *Id.* (quotation omitted).

An omission may also be a deceptive act for purposes of a GBL claim.  *See Paradowski v. Champion Petfoods USA, Inc.*, No. 22-0962, 2023 WL 3829559, at *2 (2d Cir. June 6, 2023) ("When evaluating whether an act was deceptive or misleading, New York

6

courts apply an objective standard, asking whether the *representation or omission* is likely to mislead a reasonable consumer acting reasonably under the circumstances." (emphasis added) (quotation omitted)).  "[A] plaintiff bringing an omission-based claim for § 349 liability must show that 'the business alone possesses material information that is relevant to the consumer and fail[ed] to provide this information,' or that plaintiffs could not 'reasonably have obtained the relevant information they now claim the [defendant] failed to provide.'"  *Id.* (quoting *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26–27 (1995)).  Stern fails to plausibly allege materially misleading conduct—or a deceptive act—by Electrolux to sustain a claim under the GBL.

In terms of affirmative misrepresentations, Stern contends that "Electrolux uniformly markets its refrigerators as highly rated, top-of the-line appliances," (Am. Compl. ¶ 19), and that Electrolux represented that the refrigerators were "free from defects," (*id.* ¶ 79).  Stern also refers to several advertisements promoting the features of the refrigerator.  (*See id.* ¶ 19).  Specifically, the Amended Complaint references advertisements for: (1) the refrigerator's SpaceWise organization system (the "SpaceWise ad"); (2) the refrigerator's CrispSeal Plus Crisper, (the "CrispSeal ad"); and (3) the refrigerator's EvenTemp Cooling System, (the "EvenTemp ad").  (*Id.*)

These allegations fail to cure the deficiencies previously identified by Judge Lindsay.  As to the advertisements describing the refrigerator as "highly rated" and "top of the line," Judge Lindsay concluded that these statements were non-actionable puffery and could not provide the basis for a claim under the GBL.  Nothing has

7

changed.  *See Stern*, 2024 WL 416495, at *6; *see also B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 482 (S.D.N.Y. 2010) ("[W]hen defendants allegedly promised 'top of the line' equipment with 'topnotch output fit for a 5 star customers [sic],' they were making a 'statement of opinion' or 'commercial puffery,' which is not actionable in New York."); *Lin v. Can. Goose US, Inc.*, 640 F. Supp. 3d 349, 359 (S.D.N.Y. 2022) ("Defendant's statements describing Canadian Hutterite down as 'among the highest quality Canadian down available' amount to nonactionable puffery."); *Lee v. Mikimoto (Am.) Co.*, No. 22-CV-1923, 2023 WL 2711825, at *5 (S.D.N.Y. Mar. 30, 2023) (concluding that defendant's descriptions of product as "the finest," "the most luminous of all," and "the highest quality" were non-actionable puffery).  And as to the allegation that Electrolux "falsely represented that the Refrigerators were free from defects," Judge Lindsay concluded that Stern "failed to identify the marketing and advertising material containing this representation," and that his claims therefore lacked the facial plausibility necessary to survive a Rule 12(b)(6) motion.  *Stern*, 2024 WL 416495, at *7 (citing *Vivar v. Apple Inc.*, No. 22-CV-0347, 2022 WL 4227309, at *6 (S.D.N.Y. Sep. 12, 2022)).  Stern's Amended Complaint fails to remedy this defect.  He still identifies no advertising or other material where Electrolux represented that its refrigerators were "free from defects."  (*See* Am. Compl.).

Judge Lindsay also concluded that the statements in the SpaceWise ad—which stated that consumers could "[f]ind a place for everything with our flexible organization system, including three removable glass shelves, adjustable gallon door bin, and a slim design ice maker that holds 9 pounds of ice without taking up valuable shelf space"—

8

were not "statements relate[d] to the durability or quality of the shelves and drawers." *Stern*, 2024 WL 416495, at *2, *7. Stern's additional allegations relating to the CrispSeal ad and the EvenTemp ad similarly fail to allege any misrepresentation by Electrolux about the quality of the shelves and drawers. The CrispSeal ad represented that the refrigerator had special features "to help prevent produce from spoiling," and the "advanced CrispSeal Plus keeps produce fresh with a seal that blocks out dry air, plus an added filter reduces the gas that causes produce to ripen faster." (Am. Compl. ¶ 19). Another ad touted the refrigerator's "EvenTemp Cooling system [to] keep your food fresh and reduce freezer burn with our variable speed compressor that reacts quickly to temperature fluctuations and constantly circulates cold air throughout the fresh food and freezer compartments." (*Id.*). Stern does not plausibly allege that any of the statements in these advertisements—or the SpaceWise ad—were false or misleading. Stern essentially asks the Court to read statements about the durability and quality of the drawers and shelves into the existing advertisements when they contain no such claims. The statements in the SpaceWise, CrispSeal, and EvenTemp advertisements could not possibly mislead a consumer as to the quality and durability of the shelves in Electrolux's refrigerators because the advertisements contain no statements about the shelves other than their existence. *See, e.g.*, *Turk v. Rubbermaid Inc.*, No. 21-CV-0270, 2022 WL 836894, at *7 (S.D.N.Y. Mar. 21, 2022) ("Plaintiffs do not allege that the Products' labels make any representation at all as to what temperature the Products can maintain, what temperature constitutes a food-safe temperature, or how long the Products can maintain a food-safe temperature. As such, no reasonable consumer could

9

be deceived into believing that the Products would maintain a food-safe temperature for any amount of time."); *Gordon v. Target Corp.*, No. 20-CV-9589, 2022 WL 836773, at *10 (S.D.N.Y. Mar. 18, 2022) (dismissing plaintiff's GBL claims where plaintiff failed to allege any statements on the products' label that deceived consumers in the manner alleged).[2]

Ultimately, he contends that the advertisements touting the organizational and other features of the refrigerator are misleading because some of the refrigerator parts broke. This is insufficient to allege a misrepresentation by Electrolux. *See, e.g., Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 258–59 (E.D.N.Y. 2014) ("It is not enough to simply allege, as the plaintiff does, that the ANR products do not and cannot work, and thus the advertisements espousing their positive qualities are misleading."). Accordingly, Stern fails to allege any deceptive act or misrepresentation by Electrolux.

To the extent Stern makes an omission-based GBL claim, he fails to demonstrate that Electrolux had exclusive knowledge of the defect or that he could not have discovered the defect himself. Stern's Amended Complaint contains a series of reviews published online in support of his allegations that Electrolux was aware of the defect. (Am Compl. ¶ 64). While these reviews may establish Electrolux's knowledge of the

---

[2] Stern seemingly contends that because the specific injury he complains of—that he has "not experienced the storage benefits in [his] refrigerator advertised by Electrolux"—is related to quality and durability, his allegations are sufficient to state a GBL claim. (Pl.'s Opp'n to Def.'s Mot. to Dismiss dated July 17, 2025, Dkt. No. 33-6 at 4 (emphasis omitted)). Stern cites no authority for this proposition. That Stern's injury relates to quality and durability does not change the fact that he identifies no misrepresentations made by Electrolux, which is fatal to his GBL claims. *See Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000) ("The plaintiff . . . must show that the defendant's 'material deceptive act' caused the injury.").

10

defect, they also establish that Stern could have discovered the defect himself.  Indeed, Stern's Complaint excerpts online reviews about the defect he complains of—the quality and durability of the shelves and drawers—that were posted well before he decided to purchase the refrigerator.  (*E.g., id.* at 22–23 (reviews from September and October 2019 discussing issues with the shelves and drawers breaking)).  Because Stern's own allegations demonstrate that information about the defect was publicly available and easily discoverable, he fails to state an omission-based GBL claim.  *Cf. Paradowski*, 2023 WL 3829559, at *3 ("[T]he factual record establishes that a reasonable consumer could have discovered that Champion's pet foods had a material risk of containing some measurable amount of heavy metals.  Because Plaintiff has failed to show that the business alone possesses this information, its § 349 claim fails." (quotation omitted)); *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 151 (S.D.N.Y. 2022) (rejecting plaintiff's omission-based GBL arguments because "Defendant clearly did not alone possess the allegedly omitted information, given that Plaintiff cites to environmental researchers, PETA, the 2017 Pulse of the Fashion Industry Report, 'industry sources,' and the United Kingdom's House of Commons Environmental Audit Committee as discussing the environmental impact of the wool industry and sheep farming").

Because Stern fails to plausibly allege a deceptive act or misrepresentation by Electrolux, his Complaint fails to state a GBL claim, and the Court dismisses those claims.  *See Stutman v. Chem. Bank*, 95 N.Y.2d 24, 31 (2000) (affirming dismissal of GBL claim where "plaintiffs . . . failed to show that defendant committed a deceptive act").

And because he has had multiple opportunities to cure these defects and failed to do so, the dismissal is with prejudice.

## II.   Fraudulent Concealment / Nondisclosure & Negligent Misrepresentation

Stern's Amended Complaint asserts claims for fraudulent concealment/ nondisclosure, (Am. Compl. ¶¶ 120–35), and negligent misrepresentation, (*id.* ¶¶ 161– 65), based on largely the same alleged misrepresentations and omissions as his GBL claims.  These claims fail for the same reasons his GBL claims fail.  *See, e.g., Sandoval v. Uphold HQ Inc.*, No. 21-CV-7579, 2024 WL 1313826, at *6 (S.D.N.Y. Mar. 27, 2024) ("[W]here a GBL § 349 claim fails, a similarly-premised fraud claim will often also fail."); *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 584–85 (S.D.N.Y. 2021) (dismissing plaintiff's negligent misrepresentation and fraud claims after concluding plaintiff failed to state a claim under the GBL because "the failure of Plaintiffs' overarching theory of misleading business practices dooms these claims as well").

With respect to the fraudulent concealment claim, Stern must demonstrate that Electrolux had a duty to disclose the concealed information.  *Harbinger Cap. Partners LLC v. Deere & Co.*, 632 F. App'x 653, 656 (2d Cir. 2015) ("Under both federal and New York law, an omission is actionable only if the defendant had a duty to disclose.").  Because a manufacturer's duty to disclose generally arises in a direct-consumer transaction, *see Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 72 (E.D.N.Y. 2017), and Stern purchased from a third-party, he contends that Electrolux's duty to disclose arises from their superior knowledge of the defect, *see id.; Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13 F.4th 247, 263 (2d Cir. 2021) (recognizing duty to disclose "may

12

arise . . . where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge" (quotation omitted)). But the claim fails for the same reason his omission-based GBL claim fails—Stern's own allegations demonstrate Electrolux did not have exclusive or superior knowledge of the defect. (*See* Am. Compl. ¶ 64). Information about the defect was readily available to Stern—his Amended Complaint includes reviews posted publicly that he could have read prior to purchasing the refrigerator. (*Id.*).

With respect to negligent misrepresentation, Stern's failure to allege any misrepresentation by Electrolux in connection with his GBL claims dooms this claim as well. "The elements of a claim for negligent misrepresentation under New York law are (1) a duty in the defendant, as the result of a special relationship, to give correct information; (2) a false representation that the defendant knew [or] should have known to be incorrect; (3) the defendant's knowledge that the plaintiff wanted the information supplied for a serious purpose; (4) the plaintiff's intent to rely upon the information; (5) reasonable reliance; and (6) damages." *Aaronson v. Kellogg Co.*, 837 F. App'x 850, 851 n.2 (2d Cir. 2021) (citing *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012)). As discussed with respect to Stern's GBL claims, he fails to identify any false or misleading representation made by Electrolux. He therefore cannot state a claim for

13

negligent misrepresentation, which similarly requires a false representation by the defendant.[3]

In sum, Stern's fraudulent concealment and negligent misrepresentation claims fail for the same reasons as his GBL claims.

### III.   Breach of Warranty Claims

"[T]o asse[r]t a claim for breach of an express or implied warranty under New York law, a buyer must provide the seller with timely notice of the alleged breach." *MacNaughton,* 67 F.4th at 100 (quotation omitted); *see also* N.Y. U.C.C. § 2-607(3)(a) ("[T]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy[.]").

Stern's notice to Electrolux regarding the alleged breach of warranty was not timely.  Contrary to his contention that he "immediately informed Electrolux that the drawers and shelving broke," (Pl.'s Opp'n to Def.'s Mot. to Dismiss dated July 17, 2025, Dkt. No. 33-6 at 7), the Amended Complaint indicates that he did not inform Electrolux until October 2021, (Am. Compl. ¶¶ 36–37), 14–17 months after they broke, (*see id.* ¶ 35 (alleging the shelving "began breaking within six to nine months of purchase")).[4]  In the

---

[3] Stern's additional allegation that Electrolux made "misrepresentations in its standard written warranty and otherwise that it would repair defective refrigerators," (Am. Compl. ¶ 162), does not change the result.  Stern does not allege any part of the warranty was false—he only makes cursory allegations that it was unconscionable.  (*Id.* ¶¶ 62–63).

[4] To the extent Stern meant that the refrigerator began breaking within six to nine months from when it was delivered in February 2020, his 11–14-month delay in notifying Electrolux after the shelving broke still fails to satisfy the timely notice requirement.

prior case, Judge Lindsay concluded that a 19-month gap between the notice and the discovery of the defect "lack[ed] the temporal proximity required to satisfy the notice requirement." *Stern*, 2024 WL 416495, at *10. Stern's new allegations do not cure this defect—the 14-to-17-month gap between his discovery of the defect and his notice to Electrolux still fails to satisfy the requirement of timely notice. *See, e.g.*, *Lancaster v. Am. Textile Co.*, 719 F. Supp. 3d 204, 224 (N.D.N.Y. 2024) (finding plaintiff's complaint insufficient to satisfy timely notice requirement where it was filed 11–23 months after she purchased the product). Even if Stern could satisfy the timely notice requirement, his breach of warranty claims still fail for the other deficiency identified by Judge Lindsay, which he has not cured. Stern has not demonstrated privity between him and Electrolux, which is required to sustain a breach of warranty claim where a plaintiff alleges only economic injury. *Stern*, 2024 WL 416495, at *11.

CONCLUSION

For the reasons explained above, Electrolux's motion to dismiss is granted, and the Court dismisses Stern's claims with prejudice and without leave to amend. Across his two cases, Stern has filed three complaints and failed to cure previously identified deficiencies. *See Sprague v. Salisbury Bank & Tr. Co.*, 969 F.3d 95, 101 (2d Cir. 2020) ("'Repeated failure to cure deficiencies by amendments previously allowed' is a valid

15

reason to deny leave to amend.") (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  The

Clerk of Court is directed to close this case.

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date:   March 19, 2026
         Central Islip, New York

16